UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARLES RASHID et al., | : | |
| Plaintiffs, | : | Civ. No. 17-2805 (FLW) (TJB) |
| v. | : | |
| GARY M. LANIGAN et al., | : | **OPINION** |
| Defendants. | : | |

**FREDA L. WOLFSON, U.S.D.J.**

## I. INTRODUCTION

Plaintiffs, Charles Rashid ("Rashid"), Ibn Pasha ("Pasha"), and William McCray ("McCray") (collectively, "Plaintiffs"), are state prisoners who were incarcerated at New Jersey State Prison, in Trenton, New Jersey.[1] They are proceeding *pro se* with a civil rights complaint filed under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the New Jersey Civil Rights Act ("NJCRA"). (Am. Pet., ECF No. 7.) Presently before the Court is a motion by defendants, Gary M. Lanigan ("Lanigan"), Stephen D'Ilio ("D'Ilio"), Andrew P. Sidamon-Eristoff ("Sidamon-Eristoff"), and Jignasa Desai-McCleary ("Desai-McCleary") (collectively, "Defendants"), for dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) For the following reasons, the motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

This action originated as *Abdul-Aziz v. Lanigan*, Civ. A. No. 14-2026 (FLW) (TJB), ("the Prior Action") in which Plaintiffs, as well as another prisoner, Sharob Abdul-Aziz ("Abdul-

---

[1] It appears that Rashid and Pasha remain incarcerated at New Jersey State Prison, while McCray is now incarcerated at South Woods State Prison, in Bridgeton, New Jersey.

Aziz"), asserted § 1983 and RLUIPA claims against Lanigan, as the commissioner of the New Jersey Department of Corrections ("NJDOC"), D'Ilio, as the administrator of New Jersey State Prison ("NJSP"), and Sidamon-Eristoff and Desai-McCleary, as officials with the New Jersey Department of the Treasury ("Treasury"). The plaintiffs in the Prior Action alleged interference with their religious exercise as practicing Muslims based on four distinct grounds: (1) denial of daily Halal meats and meals; (2) denial of donated Halal feast meals; (3) prohibition and confiscation of personal prayer oils; and (4) failure to facilitate congregational prayer. *See* Civ. A. No. 14-2026, Compl., ECF No. 1. They alleged that, while Jewish inmates received kosher meals, Muslim inmates did not receive Halal meals and were forced to adopt a vegetarian diet. *Id.* ¶¶ 14–16. While they had previously been given donated Halal meals for two annual Islamic feasts, they alleged that this practice was ceased at the direction of Treasury officials. *Id.* ¶¶ 17–20. The plaintiffs in the Prior Action also alleged that prison officials had begun confiscating, and then had prohibited, personal prayer oils, a component of daily prayers, despite other oils being sold in the prison commissary. *Id.* ¶¶ 21–26. Finally, the plaintiffs alleged that their right to participate in daily congregational prayer had in some way been impaired.[2] *Id.* ¶¶ 27–32.

In March 2016, this Court granted in part and denied in part a motion to dismiss the Prior Action. Civ. A. No. 14-2026, ECF No. 27. Specifically, the Court found that Rashid, Pasha, and

---

[2] Abdul-Aziz had also instituted a parallel action several years earlier, before District Judge Mary L. Cooper, *Abdul-Aziz v. Ricci*, Civ. A. No. 08-5764 (MLC) (DEA), which similarly asserted, among other claims, violations of § 1983 and RLUIPA concerning denial of Halal feast meals and confiscation of prayer oils. In that action, he specifically challenged a policy change by New Jersey State Prison administration prohibiting possession of prayer oil and subsequent confiscation of such oil. (Civ. A. No. 08-5764, Am. Compl., ECF No. 5, ¶¶ 5, 36.) The procedural course of that case is complex, but it suffices, for the purposes of this opinion, to note that, after a remand from the Supreme Court, that action was settled and dismissed with prejudice. Civ. A. No. 08-5764, Stip. & Order, ECF No. 121.

2

McCray's claims were not facially untimely under the applicable statutes of limitations.[3] *Id.* at 8–13. As the defendants in the Prior Action were named only in their official capacities, the Court dismissed with prejudice all claims for damages against them as barred by Eleventh Amendment immunity. *Id.* at 18–20. The Court noted that the plaintiffs could seek to amend their complaint to seek relief from the defendants in their individual capacities, but also indicated that RLUIPA claims may not be asserted against government employees in their individual capacities. *Id.* at 20. The Court thus granted the plaintiffs leave, "[t]o the extent it is not inconsistent with this Opinion, [to] file an Amended Complaint that names Defendants in their individual capacities under 1983 and NJCRA." *Id.* The Court further denied an argument to dismiss the remaining RLUIPA claims for failure to state a claim. *Id.* at 20–21.

Following the Court's decision on the dismissal motion in the Prior Action, Abdul-Aziz filed his Amended Complaint, Civ. A. No. 14-2026, ECF No. 31, while Rashid, Pasha, and McCray moved to file a separate Amended Complaint, Civ. A. No. 14-2026, ECF No. 43. Finding that the plaintiffs could not proceed with separate pleadings, the Court directed the plaintiffs to notify the Court whether they wished to remain as plaintiffs in the same action. Civ. A. No. 14-2026, ECF No. 45. After receiving the plaintiffs' responses, the Court found good cause to sever the matter into two actions, creating the instant proceeding, as well as a separate proceeding in *Abdul-Aziz v. Lanigan*, Civ. A. No. 17-2806 (FLW) (TJB).

Accordingly, Plaintiffs' Amended Complaint from the Prior Action became the active, original complaint in this proceeding on April 25, 2017. (Compl., ECF No. 1.) On September 21, 2017, Magistrate Judge Tonianne J. Bongiovanni granted a motion by Plaintiffs for leave to

---

[3] The Court dismissed Abdul-Aziz's prayer-oil claims and the majority of his feast-meal claims as untimely. Civ. A. No. 14-2026, ECF No. 27, at 13–16.

3

supplement their Complaint. (*See* Letter Order, ECF No. 6.) Plaintiffs filed an Amended Complaint on October 13, 2017, which is the operative pleading in this action. (ECF No. 7.)

The Amended Complaint alleges claims that are largely the same as those asserted since the start of this litigation.[4] (*See id.*) First, Plaintiffs allege that they and other prisoners "are denied any type of Halal Meals that include meat as part of NJDOC's Therapeutic Central Menu," despite NJDOC providing Jewish inmates three Kosher meals daily. (*Id.* ¶¶ 11–12.) Regarding the issue of feast meals, Plaintiffs allege,

> The NJDOC have vested authority with the Department of Treasury Division of Purchase and Property to allow or deny Plaintiffs their religious rights concerning donated Halal Meats and Meals, which until December of 2007, Plaintiffs were allowed donated in accordance with their religious traditions for their two (2) annual Islamic Feast.
>
> Defendants denied Plaintiffs this right under N.J.S.A. 52:20-13. It should be noted NJSP previously prevailed on deminimis cost issue in Williams v. Morton, which plaintiffs believe is moot because all of Halal food is/was donated by by [sic] an approved vendor, thus no security issue is involved.

(*Id.* ¶¶ 13–14.) Plaintiffs contend that these practices violate their First Amendment rights and provisions of RLUIPA by imposing a substantial burden on religious practice "by forcing plaintiffs, who are Muslims, to prescribe [sic] to vegetarianism which is not in accordance with plaintiffs['] Islamic beliefs." (*Id.* ¶¶ 25–26.) Plaintiffs also argue that denying them Halal meals, while providing Jewish inmates Kosher meals, violates the Establishment Clause of the

---

[4] The Amended Complaint divides factual allegations into four "issues" (the "Issue of the Halal Daily Menu," the "Issue of the Halal Id Festival Meals/Meats," the "Issue of Prayer Oil," and the "Issue of Congregational Prayer"), but it asserts seven causes of action raising distinct legal theories, some of which concern multiple factual issues. (*See* ECF No. 7.) For the sake of clarity, the Court here primarily organizes its discussion of the Amended Complaint by "issue," rather than cause of action.

4

First Amendment, and that the policy of denying feast meals was arbitrary and capricious. (*Id.* ¶¶ 27–28.)

Plaintiffs allege that NJDOC, on July 15, 2013, prohibited prayer oil for all Muslim inmates, claiming that it "would provide the oils to the Muslim population during classes and prayer service." (*Id.* ¶ 15.) They contend that, on October 7, 2016, "the department enacted policy wherein Muslim inmates that could afford it, would purchase a Frankincense Oil (a catholic religious oil) from NJDOC." (*Id.*) Plaintiffs allege that this prohibition, as well as the barring of purchasing prayer oil "from Source of Sale," imposed a substantial burden on their religious practice and violate RLUIPA and the New Jersey Constitution. (*Id.* ¶¶ 16, 29.)

Plaintiffs further allege that, while Jewish inmates "are allowed to meet daily for group prayer," "Muslim inmates at NJSP are not allowe[d] to meet daily for congregational prayer." (*Id.* ¶¶ 18–19.) They contend that this violates RLUIPA, the Establishment Clause of the First Amendment, New Jersey Administrative Code 10A:17-5, and internal policies. (*Id.* ¶ 30.)

Additionally, Plaintiffs allege that the violations of their rights, in contrast with permitting Jewish inmates "all of the above religious amendities [sic] according to their religious precepts," demonstrates a violation of their Equal Protection rights. (*Id.* ¶ 31.) Plaintiffs seek declaratory judgment, compensatory damages, punitive damages, and a permanent injunction directing Defendants and others to correct the alleged violations. (*Id.* at 10–11.) The demand for relief also seeks attorneys' fees and costs, appointment of counsel, and certification as a class action. (*Id.* at 11.)

Defendants now move to dismiss the Amended Complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6).[5] (ECF No. 13.) On January 30, 2018, the Court

---

[5] For the sake of clarity, explanations of the dismissal arguments are included in the Court's analyses of each issue, *infra*, rather than in this section.

granted an application by Plaintiffs to extend their time to oppose the motion, giving them an additional month to do so. (*See* ECF Nos. 14 & 15.) Despite this, Plaintiffs have never filed any opposition to this motion.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(6)

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### B. 42 U.S.C. § 1983 and the First Amendment

As a general matter, a plaintiff may pursue a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

To establish a violation of the Free Exercise Clause of the First Amendment, a prisoner plaintiff must first show that a prison practice or policy has substantially burdened the practice of the prisoner's religion. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017). Once a substantial burden on religious exercise is shown, the policy or practice is

7

invalidated if it is not reasonably related to legitimate penological interests.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012).

The Establishment Clause of the First Amendment has also been interpreted as requiring "'governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary Cty. v. ACLU*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).  This has typically been assessed under the *Lemon* test, under which a statute or governmental action must (1) "have a secular legislative purpose," (2) have a "principal or primary effect . . . that neither advances nor inhibits religion," and (3) "not foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971) (internal quotation marks omitted); *see also Stratechuk v. Bd. of Ed., S. Orange-Maplewood Sch. Dist.*, 587 F.3d 597, 604 (3d Cir. 2009).  The Supreme Court has also applied other tests in assessing alleged Establishment Clause violations, such as where governmental bodies have coerced individuals to participate in a "religious exercise," *Lee v. Weisman*, 505 U.S. 577, 592–99 (1992) (originating the "coercion test"), or where a reasonable, informed person would perceive a governmental act as an endorsement or disapproval of religion, *see Lynch v. Donnelly*, 465 U.S. 668, 688–89 (1984) (O'Connor, J., concurring) (originating the "endorsement test").

C. **The NJCRA**

The NJCRA provides a similar cause of action to § 1983, stating, in relevant part,

> Any person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those substantive rights,
> privileges or immunities has been interfered with or attempted to
> be interfered with, by threats, intimidation or coercion by a person

8

> acting under color of law, may bring a civil action for damages and
> for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c). Due to the intentional statutory similarities, this provision "is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) ("To sustain a § 1983 claim, or a NJCRA claim, a plaintiff must show that a defendant had in place a custom or policy which resulted in constitutional deprivation.").

### D. RLUIPA

RLUIPA prevents the government from placing a substantial burden on prisoner's religious exercise, providing, in relevant part,

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution . . .
> even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden
> on that person—
>
> (1) is in furtherance of a compelling governmental interest;
> and
>
> (2) is the least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, to state a claim under RLUIPA, a plaintiff must allege that the defendant has placed a substantial burden on the plaintiff's sincerely held religious belief. *See Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007).

RLUIPA does not require a plaintiff to allege that the religious practice at issue is a tenet of his or her religion or otherwise required by his or her religion. *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). A substantial burden will be found if

> "1) a follower is forced to choose between following the precepts
> of his religion and forfeiting the benefits otherwise generally
> available to other inmates versus abandoning one of the precepts of
> his religion in order to receive a benefit; OR 2) the government

9

> puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."

*Washington*, 497 F.3d at 280. If a prisoner plaintiff shows that a policy or practice substantially burdens a sincerely held religious belief, the burden shifts to the defendant to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so. *See Holt*, 135 S. Ct. at 863. "RLUIPA does not allow for the recovery of money damages; in other words, a RLUIPA plaintiff may seek only injunctive or declaratory relief." *Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (internal citation omitted).

## IV. ANALYSIS

### A. Eleventh Amendment Immunity

Defendants first argue that Eleventh Amendment immunity bars Plaintiffs' claims for damages as against them in their official capacities. (Letter Br., ECF No. 13-1, at 6–8.) As already established by this Court's Opinion in the Prior Action, Eleventh Amendment immunity generally bars claims against state employees sued in their official capacities, but federal claims for prospective injunctive relief may proceed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *Sossamon v. Texas*, 563 U.S. 277, 288–93 (2011); *see also* Civ. A. No. 14-2026, ECF No. 27 at 18–20. This exception for claims seeking prospective injunctive relief, initially recognized in *Ex parte Young*, 209 U.S. 123 (1908), is read narrowly, and does not permit claims for declaratory judgment as to past acts. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145–46 (1993) (discussing *Ex parte Young*). Furthermore, the *Ex parte Young* doctrine permits only *federal* claims seeking prospective injunctive relief, and does not apply to state claims, including those asserted under the NJCRA. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Balsam v. Sec'y of State of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015), *cert. denied sub nom. Balsam v. Guadagno*, 136 S. Ct. 189 (2015).

Furthermore, the Court already dismissed the damages claims against Defendants in their official capacity with prejudice. Civ. A. No. 14-2026, ECF No. 27 at 18–20. Accordingly, Plaintiffs' claims seeking declaratory relief as to monetary damages from Defendants in their official capacities must be dismissed. *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 145–46; *Durham v. Dep't of Corr.*, 173 F. App'x 154, 155–56 (3d Cir. 2006). Additionally, all claims under NJCRA against defendants in their official capacities must be dismissed. *See Balsam*, 607 F. App'x at 183.[6]

### B. Personal Involvement of the Defendants

Defendants next argue that Plaintiffs fail to adequately allege personal involvement by Defendants in the alleged wrongdoing. (ECF No. 13-1 at 11–15.) They urge that liability may not be premised solely on a theory of respondeat superior, and that a defendant must have personal involvement in the alleged underlying acts to be liable. (*Id.*) They contend that Plaintiffs include no facts establishing personal involvement, such as knowledge or acquiescence, in the alleged violations, instead relying entirely on conclusory allegations. (*Id.*)

Supervisory liability generally requires some affirmative conduct by the supervisor, but this may include a supervisor's implementation or maintenance of a policy, practice, or custom that harmed the plaintiff. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v.*

---

[6] Defendants separately argue that Plaintiffs' claims must be dismissed against Defendants in their official capacity, as they are, in that context, not considered persons for the purposes of § 1983, the NJCRA, or RLUIPA. (ECF No. 13-1 at 8–11.) While this is conceptually a different question—a matter of which claims are enabled by the statute rather than which are barred by immunity under the Eleventh Amendment—these issues are often considered in conjunction, and the outcome is typically the same. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66, 71 & n.10 (1989). While state employees sued in their official capacities may not be "persons" for the purposes of damages claims under § 1983, they may still be sued for prospective injunctive relief. *Will*, 491 U.S. at 71 n.10. In any case, as Defendants' official capacity claims are dismissed on sovereign immunity grounds, except insofar as the federal claims seek prospective injunctive relief, I need not reach the personhood arguments.

11

*Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Thus, a person who has final policy-making authority may be held liable under § 1983 if that person establishes a policy that is unconstitutional and that injures the plaintiff. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Chavarriaga*, 806 F.3d at 223.

Supervisory liability may also be established by the failure to maintain proper policy, if the plaintiff is able to

> (1) identify the specific supervisory practice or procedure that the supervisor has failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). This test, which the Third Circuit described as "the deliberate indifference test applied to the specific situation of a policymaker," *Barkes*, 766 F.3d at 317 (internal quotation marks omitted), clearly contemplates circumstances in which the supervisor's liability arises from an alleged failure to enact or enforce proper policy.

Here, Plaintiffs allege that Lanigan, as NJDOC commissioner, "is responsible for all matters of policy enacted and enforced within the NJDOC, and has the final overall supervisory authority to approve, deny, or modify policies within the NJDOC including the violations cited herein." (ECF No. 7 ¶ 7.) Plaintiffs further allege that the Muslim inmates in all NJDOC prisons

12

are denied Halal meals with meat "as part of the NJDOC's Therapeutic Central Menu" and that NJDOC prohibited prayer oils for Muslim inmates, though subsequently permitted purchase of frankincense oil. (*Id.* ¶¶ 11, 15.) As to D'Ilio, Plaintiffs assert that, as administrator of NJSP, he "had the final overall supervisory authority to deny, approve, modify, and enforce policies and practices," and they contend that in his current position as assistant commissioner of NJDOC, he "is responsible for enacting policies and has the overall supervisory authority to approve, deny, or modify policies within the NJDOC including the violations cited herein." (*Id.* ¶ 8.) Plaintiffs assert that NJSP does not permit Muslim inmates to meet for daily congregational prayer. (*Id.* ¶¶ 11, 18–19.) Plaintiffs generally allege that "Defendants have actual knowledge of the violations complained of." (*Id.* ¶ 20.)

Particularly given the leeway that must be granted to *pro se* litigants, *see Haines*, 404 U.S. at 520, the Court finds that these allegations plead sufficient personal involvement by Lanigan and D'Ilio. Plaintiffs allege that Lanigan and D'Ilio had ultimate authority to make and enforce policies at NJDOC and NJSP and that policies were enacted or enforced that violated Plaintiffs' rights. It is thus reasonable to construe Plaintiffs' claims as alleging that Lanigan and D'Ilio took part in creating the allegedly violative policies. *See Chavarriaga*, 806 F.3d at 223. With respect to these claims, Plaintiffs allege no involvement by Treasury or the Treasury defendants, and thus there can be no inference of personal involvement by Sidamon-Eristoff or Desai-McCleary. (*See* ECF No. 7 ¶¶ 11–12, 15–19.) Furthermore, as Plaintiffs' congregational prayer issue is specific to NJSP, no personal involvement by Lanigan may be inferred in the circumstances underlying that claim. (*See id.* ¶¶ 18–19.)

The Court further finds that Plaintiffs fail to plead any personal involvement by any defendants, or even any supporting facts whatsoever, in support of his claim regarding Halal feast meals. Indeed, the full extent of their allegations on this topic are as follows:

> 13. The NJDOC have vested authority with the Department of Treasury Division of Purchase and Property to allow or deny Plaintiffs their religious rights concerning donated Halal Meats and Meals, which until December of 2007, Plaintiffs were allowed donated in accordance with their religious traditions for their two (2) annual Islamic Feast.
>
> 14. Defendants denied Plaintiffs this right under N.J.S.A. 52:20-13. It should be noted NJSP previously prevailed on deminimis cost issue in Williams v. Morton, which plaintiffs believe is moot because all of Halal food is/was donated by by [sic] an approved vendor, thus, no security issue is involved.

(ECF No. 7 ¶¶ 13–14.) These allegations do not connect Defendants to a specific underlying policy or rights violation. Consequently, they are insufficient, under *Iqbal* and *Twombly*, to state a claim against Defendants.[7] For these reasons, the Halal feast meal claims are dismissed without prejudice, all claims against Sidamon-Eristoff and Desai-McCleary are dismissed without prejudice, and the congregational-prayer claims as against Lanigan are also dismissed without prejudice.

### C. Qualified Immunity

Defendants further contend that Plaintiffs' claims must be dismissed on the basis of qualified immunity. (ECF No. 13-1 at 15–18.) They argue that Plaintiffs have failed to allege any violation of constitutional rights and that, even if they have, such rights were not clearly established. (*Id.* at 17–18.)

---

[7] The Court notes that, given the lack of allegations regarding the underlying facts, the feast-meal claim is also ripe for dismissal pursuant to the Court's authority, under 28 U.S.C. § 1915(e)(2)(B), to *sua sponte* screen complaints filed by litigants proceeding *in forma pauperis*. *See* Civ. A. No. 14-2026, Order, ECF No. 2 (permitting the plaintiffs to proceed *in forma pauperis*).

"Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Under this doctrine, a government official is immune from claims for damages unless, interpreting the allegations most favorably to the plaintiff, they show (1) that the official violated the plaintiff's constitutional rights and (2) that the constitutional right violated was clearly established. *Id.* at 201; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."). A right is considered clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). While courts generally address the first prong—whether a constitutional violation is alleged—first, a court may exercise discretion in considering these elements in the order it sees fit. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Third Circuit has established that defendants generally bear the burden of proving the affirmative defense of qualified immunity. *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006). On this motion, however, Defendants' briefing on qualified immunity consists of boilerplate legal standard followed by a mere three sentences, devoid of citation to any legal authority, generically claiming that Plaintiffs have not alleged constitutional violations and, if they have, that Plaintiffs' rights were not clearly established. (ECF No. 13-1 at 17–18.) Defendants' most specific argument on this issue is that "[i]t was not clear that because Plaintiffs' [sic] did not receive certain religious foods and oils that it was a clear violation of

either the First or Fourteenth Amendment." (*Id.*) Given the inadequacy of this briefing, the Court is left unable to evaluate Defendants' defense of qualified immunity.[8]

Nevertheless, as the Court previously found that qualified immunity shielded Lanigan from Abdul-Aziz's claims concerning daily Halal meals, the Court will dismiss the identical claims raised by Plaintiffs in this action. *See Abdul-Aziz*, Civ. A. No. 17-2806, ECF No. 8, at 14–15. Although the Third Circuit has recognized that there may be circumstances in which a prison's failure to accommodate religious dietary practices becomes a violation of First Amendment rights, it has also repeatedly found that providing only vegetarian meals to accommodate Halal-observant inmates is constitutionally acceptable.[9] *See Riley v. DeCarlo*, 532 F. App'x 23, 27–28 (3d Cir. 2013); *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011);

---

[8] Even if the Court had sufficient briefing to address Defendants' qualified-immunity argument, the potential effect of that defense would still be limited. First, Defendants allege only that rights as to religious foods and oils are not clearly established, but they do not address how qualified immunity applies to Plaintiffs' congregational-prayer claims. Second, qualified immunity only shields defendants in their individual capacities and only against claims for damages. *See Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 572 n.151 (3d Cir. 2017); *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006). Accordingly, the qualified-immunity defense would not affect Plaintiffs' RLUIPA claims, which seek injunctive relief against Defendants in their official capacity. *See* Civ. A. No. 14-2026, ECF No. 27 at 18–21.

[9] In *Williams v. Morton*, 343 F.3d 212, Muslim inmates at New Jersey State Prison similarly challenged the policy of providing only vegetarian meals and no Halal meat. *See id.* at 215–16. The Third Circuit rejected the Free Exercise claim, finding the regulation reasonable and that the provided vegetarian meals complied with Halal rules. *See id.* at 217–21. Similarly, in *Adekoya v. Chertoff*, 431 F. App'x 85, the Third Circuit affirmed this District's *sua sponte* dismissal of a claim that Bergen County Jail officials had failed to provide him Halal meals. *Id.* at 87. The court found that Adekoya "failed to make out a First Amendment claim" because "he did not allege that he was denied vegetarian meals or otherwise prevented from practicing his religion." *Id.* at 88. The Third Circuit and this District have subsequently reached similar conclusions in other cases. *See Riley*, 532 F. App'x at 27–28 (affirming summary judgment dismissing Free Exercise claim by inmate denied Halal meat diet); *Stathum v. Nadrowski*, Civ. A. No. 15-5502 (MAS) (TJB), 2016 WL 7411428, at *1, *5 (D.N.J. Dec. 22, 2016) (dismissing First Amendment claim by plaintiff challenging Halal accommodation only with vegetarian meals); *McCray v. Passaic Cty. Jail*, Civ. A. No. 13-6975 (WJM), 2013 WL 6199202, at *1, *3 (D.N.J. Nov. 27, 2013) (dismissing upon screening Free Exercise claim challenging vegetarian Halal meals).

16

*Williams v. Morton*, 343 F.3d 212, 217–21 (3d Cir. 2003). Accordingly, Plaintiffs' § 1983 and NJCRA claims related to daily Halal meals, insofar as they seek damages, fail to plead violations of their constitutional rights, and these claims are dismissed without prejudice.[10] The remainder of Defendants' motion seeking dismissal under qualified immunity is denied without prejudice.

**D. Punitive Damages**

Finally, Defendants seek dismissal of Plaintiffs' demand for punitive damages. (ECF No. 13-1 at 18–19.) They argue that "the record is devoid of any facts . . . or evidence indicating that State Defendants acted with an 'evil motive' or 'callous indifference.'" (*Id.* at 19.) Punitive damages may be warranted on a § 1983 claim if the defendant's actions "involve[] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Whether an award of punitive damages is appropriate is a question generally left to the jury. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 269–70 (1981).

Defendants' argument that the "record" contains no facts that would justify punitive damages misapprehends the standard of review on this motion to dismiss under Rule 12(b)(6), pursuant to which the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Fowler*, 578 F.3d at 210. Defendants make no argument that punitive damages may not, as a matter of law, be awarded on Plaintiffs claims, instead they ask the Court to make a factual determination that is properly left to the jury. *See Newport*, 453 U.S. at 269–70. Accordingly, dismissal of the demand for punitive damages would not be appropriate at this time and is denied.

---

[10] As noted above regarding the feast-meal claim, these claims could also be dismissed for failure to state a claim under the Court's screening authority, pursuant to 28 U.S.C. § 1915(e)(2)(B). *See supra* note 9.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint in this action, (ECF No. 13), is GRANTED in part and DENIED in part, as follows: (1) Plaintiffs' claims seeking declaratory relief as to, and monetary damages from, Defendants in their official capacities are dismissed with prejudice as barred by Eleventh Amendment immunity; (2) Plaintiffs' claims under the NJCRA against Defendants in their official capacities are dismissed with prejudice; (3) the claims regarding daily Halal meals insofar as they seek damages from Defendants in their individual capacity are dismissed without prejudice; (4) the claims regarding Halal feast meals are dismissed without prejudice; (5) all claims against Sidamon-Eristoff and Desai-McCleary are dismissed without prejudice; (6) the congregational-prayer claims as against Lanigan are dismissed without prejudice; and (7) all other claims are permitted to proceed at this time. An appropriate order follows.

DATED: July 31, 2018

/s/ Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge